■ In the Matter of SHIR-CLIFF, LLC, Petitioner, v COUNTY OF CLINTON HEALTH DEPARTMENT, Respondent. [917 NYS2d 350]—

McCarthy, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Clinton County) to review a determination of respondent which ordered the closure of petitioner's mobile home park.

Since 2004, petitioner has operated a mobile home park in Clinton County. Over the years, respondent received several complaints pertaining to, among other things, malfunctioning septic and public water systems in petitioner's park. Respon-

dent inspected the property annually, as well as when complaints were received. Numerous violations were noted during an April 2008 inspection, leading the parties to enter into a stipulation for petitioner to correct certain problems. The parties entered into additional stipulations, including extensions of time. When petitioner did not resolve the problems, respondent commenced an administrative enforcement proceeding.

Following a hearing, the Hearing Officer determined that respondent had proven all 18 alleged violations of the Public Health Law, State Sanitary Code (*see* 10 NYCRR ch I) and Clinton County Sanitary Code. The Clinton County Board of Health adopted the Hearing Officer's report, fined petitioner $6,500 for its initial and repeat violations, and ordered correction of the conditions that were detrimental to the public health, with petitioner's failure to do so within 30 days resulting in closure of the mobile home park. Upon inspection after 30 days, respondent found many uncorrected violations.[1] Respondent issued a notice ordering the closure of petitioner's park. Petitioner commenced this proceeding seeking to annul respondent's determination.

The testimony of two of respondent's public health sanitarians who had inspected petitioner's park, along with their written reports, photographs and other documentation, constituted substantial evidence to support 16 of the 18 violations. This evidence established that during at least five separate inspections over the course of five months, respondent's employees observed numerous violations of the State Sanitary Code, as well as the Clinton County Sanitary Code. Those violations, some of which occurred on more than one occasion and constituted repeat offenses, included failure to repair deep ruts and potholes in the roadway which presented a hazard to emergency vehicles (*see* 10 NYCRR 17.11 [e] [3]), failure to cap a sewer riser pipe (*see* 10 NYCRR 17.6 [b] [5]), failure to seal a water riser pipe (*see* 10 NYCRR 17.6 [a] [4]), failure to repair a broken water line (*see* 10 NYCRR 5-1.71 [a], [b]), failure to maintain chlorine residual in the potable water distribution system (*see* 10 NYCRR 5-1.30 [b] [2]), failure to secure unstable fuel oil tanks (*see* 10 NYCRR 17.6 [c]),[2] and failure to properly store or remove garbage and debris (*see* 10 NYCRR 17.11 [a]).

---

**1.** This inspection was necessary to determine if petitioner had corrected the established violations. Although the inspection also revealed some new violations, there is no indication that respondent relied on any new violations—as opposed to the failure to correct the prior violations—when it issued its order.

**2.** The State Sanitary Code holds mobile home park operators responsible for fuel distribution systems, but allows them to transfer responsibility to the

Most importantly, petitioner failed to maintain, repair or replace its septic systems so as to prevent sewage overflows (*see* 10 NYCRR 17.6 [b] [6]). On numerous occasions, raw sewage was present on the ground on multiple lots in petitioner's park, presenting an imminent health hazard to park residents and visitors. Due to this condition, as well as problems with the water supply system, respondent imposed a boil water order for the park four separate times in 2009. Although petitioner's manager testified that some of the conditions did not exist and that he remedied most of the problems as soon as he became aware of them—several on the day he was notified—respondent was entitled to make credibility determinations in favor of the sanitarians who testified. Even if respondent accepted the manager's testimony, however, a violation occurs even if it only exists for part of a day (*see* Clinton County Sanitary Code § 2.18.1). Remedying the conditions was necessary and petitioner's quick action on some violations was laudable, but promptly correcting a problem did not absolve petitioner of the original violation. Thus, substantial evidence supports 16 of the 18 violations that were alleged.

The remaining two violations dealt with petitioner's failure to install skirting or repair broken skirting on mobile homes. While the witnesses confirmed that several mobile homes lacked skirting or had broken skirting on more than one occasion, those conditions do not violate any cited law. The local ordinance that respondent cites merely requires compliance with the State Sanitary Code (*see* Clinton County Sanitary Code § 13.2.1). The state regulation requires adequate support for "mobile home stands" (10 NYCRR 17.8), but the definition of that term does not include skirting (*see* 10 NYCRR 17.1 [l]). Because the condition alleged—although it existed—did not constitute a violation, those two alleged violations should have been dismissed. Accordingly, the fine should be reduced by $250 for the alleged first offense and $500 for the alleged repeat offense (*see* Clinton County Sanitary Code §§ 2.15.1, 2.16.1).

The penalty imposed was not so disproportionate as to offend one's sense of fairness. The fines fell within the permitted range for each offense, including whether it was a first or repeat offense (*see* Clinton County Sanitary Code §§ 2.15.1, 2.16.1; *see also Matter of Somma v Jackson*, 268 AD2d 763, 765 [2000]).

occupants by formal written agreement (*see* 10 NYCRR 17.6 [c]). Petitioner established that it did not own the fuel tanks at issue during the relevant time periods, but the record does not contain proof of any formal written agreements transferring responsibility for those tanks from petitioner to its tenants.

Respondent also ordered closure of the park if petitioner did not remedy the conditions within 30 days. While petitioner contends that 30 days was an unreasonably short time period, many of the conditions had been in existence for an extended period of time and petitioner had been aware of respondent's concerns for years. Petitioner experienced sewage problems beginning shortly after purchasing the park in 2004, and they continued even after the hearing in 2009. The parties had entered into stipulations and attempted to address the water and septic problems for more than a year prior to respondent commencing the enforcement proceeding, but petitioner repeatedly failed to comply with those agreements. Petitioner had corrected several of the less serious violations, thereby creating a mitigating circumstance (see Harper v W.E. Rest., Inc., 38 AD3d 602, 604-605 [2007]). At the Board of Health meeting, however, petitioner did not appear through an officer or counsel, but instead sent an engineer who was only hired to handle some of the violations and could not answer many of the Board's questions. Closure of the park is a serious penalty and will unfortunately displace the residents from their homes, undoubtedly causing them great inconvenience. However, considering the public health hazards from the conditions that exist in the infrastructure of the park—most notably the malfunctioning public water and septic systems—and petitioner's failure to correct those conditions, closure of the park was a proportionate response and does not shock one's sense of fairness (see Matter of Featherstone v Franco, 95 NY2d 550, 555 [2000]; Matter of Puff v Jorling, 188 AD2d 977, 980-981 [1992]).

We have reviewed petitioner's remaining contentions, including allegations of selective enforcement by respondent, bias by the Hearing Officer and due process violations, and find them to be without merit.

Mercure, J.P., Peters, Spain and Malone Jr., JJ., concur. Adjudged that the determination is modified, without costs, by reversing so much thereof as found petitioner in violation of 10 NYCRR 17.8 and Clinton County Sanitary Code § 13.2.1 on December 10, 2008 and March 23, 2009; reduce petitioner's fine from $6,500 to $5,750; and, as so modified, confirmed.